UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT HALL, professionally known as
LORD FINESSE,

                Plaintiff,

      -against-

MALCOLM McCORMICK p/k/a MAC MILLER,
ROSTRUM RECORDS LLC, and DATPIFF LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JUDGE BAER**

## 12 CV 5296

ECF CASE

Docket No.

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Robert Hall, professionally known as Lord Finesse, by his attorneys Schwartz &

Ponterio, PLLC, as and for his Complaint against defendants Malcolm McCormick p/k/a Mac

Miller, Rostrum Records LLC, and Datpiff LLC, hereby alleges upon personal knowledge and

upon information and belief:

### Background

1.     This is a case is about a teenage rapper - Mac Miller - copying the music from a

song written, produced and performed by Lord Finesse, a hip hop legend, changing the title and

then distributing it under his own name in order to launch his music career.  Defendant Malcolm

McCormick, professionally known as the rapper, "Mac Miller," has conspired with co-

defendants Rostrum Records LLC and DatPiff LLC to copy the music from plaintiff's song "Hip

2 Da Game" in its entirety, distribute hundreds of thousands of copies (without charge), and

reproduce and publicly perform the song tens of millions of times, all without a license from

plaintiff.  According to press accounts, this appears to be part of a deliberate strategy on the part

of Mac Miller and his label to give away musical "mix tapes" for free – including the music of

Lord Finesse – in order to establish a fan base that would later pay for his music and concert

tickets.  The strategy has succeeded in landing Mac Miller the Number One album on Billboard

for the week of ending November 13, 2011. But Miller's success comes at the expense of Lord Finesse as he and the other defendants have willfully infringed plaintiff's exclusive copyrights.

## Nature of the Case

2.      This is an action for copyright infringement, in violation of 17 U.S.C. ¶¶ 101, *et seq.*, arising from the defendants' unauthorized reproduction and/or distribution of the plaintiff's copyrighted musical compositions.

## Jurisdiction

3.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

4.      This Court has personal jurisdiction over defendants because defendants have directed their activities and marketing of infringing recordings at New York residents, and New York residents are able to purchase downloads of the infringing work and also download and stream the infringing recording for free. Defendants thus do continuous and systematic business and/or have a place of business in this Judicial District.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C 1391(b), 1391(c) and 1400(a) because defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District. In addition, plaintiff resides in this Judicial District.

## Parties

6.      Plaintiff Robert Hall ("Hall"), is a citizen of the State of New York.

7.      Upon information and belief, defendant Malcolm McCormick, professionally known as "Mac Miller", is a citizen of the State of Pennsylvania.

8.      Upon information and belief, defendant Rostrum Records LLC ("Rostrum") is a New York limited liability company having a place of business in New York City.

2

9.      Upon information and belief, defendant DatPiff, LLC is a Pennsylvania limited liability company with its principal place of business at 5 South Centre Avenue Suite 206, Leesport PA 19533.  Upon information DatPiff, LLC also does business under the name Piff Tapes.  (DatPiff LLC and Piff Tapes shall be collectively referred to herein as "Piff").

## Lord Finesse

10.      Robert Hall is an accomplished and well-respected hip hop artist, writer and producer, professionally known as "Lord Finesse" ("Finesse").  Finesse's contributions to hip hop music can be matched by few.  Finesse wrote and produced music on two of the thirty biggest selling hip hop albums of all time as tracked by the Recording Industry Association of America ("RIAA").

11.      Finesse wrote and produced music on the album, Ready to Die, by Notorious B.I.G., an album certified quadruple platinum by the RIAA (over 4 million sold) and hailed by Rolling Stone Magazine as the third greatest hip hop album of all time, and by Time Magazine as one of the 100 greatest albums of all time.  Finesse wrote and produced music on the album, "2001" by Dr. Dre, an album certified sextuple platinum by the RIAA (over 6 million units sold), and was hailed by Hip Hop Connection magazine, as one of the 10 best hip hop albums (1995-2005).  As a rap artist, Finesse's debut album, The Funky Technician, was hailed as one of the 100 best rap albums by The Source magazine.

## Hip 2 Da Game

12.      In 1995, Finesse wrote, produced and recorded an original musical composition entitled, "Hip 2 Da Game."  Finesse registered the copyrights in "Hip 2 Da Game" with the United States Copyright Office, with an effective date September 17, 1996, registration number PA 801-113.  A copy of the Copyright Registration is attached as Exhibit 1.

13.     In 1995, "Hip 2 Da Game" was released as a vinyl record single (the "Single") to radio stations nationwide.  The Single embodied three versions of "Hip 2 Da Game" including an instrumental version.  All three versions utilized the same musical composition (the "Music"):



14.     On or about February 20, 1996, Finesse released his third Album, "The Awakening" which featured the single "Hip 2 Da Game" (which peaked at #32 on Billboard).

### Mac Miller, Rostrum and Piff Infringe Hall's Rights

15.     In 2010, Mac Miller recorded himself rapping over Finesse's Music and re-named the song, "Kool Aid & Frozen Pizza" ("The Kool Aid Song").  The Kool Aid Song was included on an album of recordings entitled "K.I.D.S. – Kickin Incredibly Dope Shit" ("K.I.D.S"):



4

16.     The K.I.D.S album cover states "Rostrum Records & Most Dope Present: K.I.D.S. – Kickin Incredibly Dope Shit."

17.     In an interview with Hitquarters.com published October 17, 2011 (the "Hitquarters Interview"), the President of Rostrum Records, Benjy Grinberg, stated, "[Mac] really wanted to work with Rostrum.  So last year we formalized the relationship and released K.I.D.S."  A copy of the Hitquarters Interview is annexed as Exhibit 2.

18.     The biography on Mac's official website, www.macmillerofficial.com, states that Mac Miller signed a record deal with Rostrum in July 2010.  The biography on Mac's Website states "In August 2010, Mac Miller released his Rostrum Records debut "K.I.D.S." and took the internet and music industry by storm."  A copy of the Mac Miller's website bio is annexed as Exhibit 3.

**PIFF's Website**

19.     Piff's website, www.datpiff.com ("Piff's Website") offers free copies of K.I.D.S to anyone.  Piff's Website states the K.I.D.S. album is an "exclusive".

20.     The description of the K.I.D.S. album on Piff's Website states, "18 Year old Pittsburgh & Newly Signed Rostrum Records MC drops his newest and most anticipated mixtape 'K.I.D.S.' This mixtape features mostly ALL original music and only one guest appearance from fellow label mate Chevy Woods. Salute to Mac Miller, Rostrum Records & Most Dope! Follow on twitter @MacMiller."

21.     Piff's website states that K.I.D.S. was added to Piff's website on August 13, 2010, that the album has double platinum status and has been downloaded over 500,000 times, and that the album has over 1.6 million views and has been streamed over 450,000 times.  A copy of the Piff web page for K.I.D.S. is annexed as Exhibit 4.

22.     K.I.D.S. is available for a download from piff.com.  Piff profits from the downloads of K.I.D.S. through the use of a message that appears stating that the mixtape is "sponsored"; when K.I.D.S is downloaded an advertisement appears:



### Number 1 Debut

23.     In the Hitquarters Interview, the President of Rostrum Records, Benjy Grinberg, stated, "It's just insane how fast it's been growing.  [Mac] went from 30,000 Facebook friends last year [in 2010] to 1.2 million this year."

24.     On or about November 8, 2011, Mac Miller and Rostrum released the Album entitled, "Blue Slide Park" which debuted as the Number 1 album in the country on The Billboard 200.

25.     Mac Miller's website states, "[t]he success of his early street buzz and social media dominance have now transitioned Mac to sold out shows across the world with The Incredibly Dope Tour upstreaming to the internationally sold out Blue Slide Park Tour with almost 200,000 tickets sold in the past year."  Exhibit 3.

26.     Mac Miller, Rostrum and Piff are also selling The Kool Aid Song on digital retail stores such as Amazon, on the album entitled, "Face In the Crowd" by the artist "Mac".

## The Kool Aid Song Music Video

27.     Mac Miller, Rostrum and Piff have also produced a music video for The Kool Aid Song and made it available on YouTube ("The Kool Aid Song Music Video").

28.     The Kool Aid Song Music Video was posted to YouTube on or about July 26, 2010.

29.     The Kool Aid Songs Music Video has over 23 million views on YouTube.

30.     The information posed by defendants below the Kool Aid Music Video on YouTube states "Original Song by Lord Finesse," and "Beat/Music by: Lord Finesse".

31.     Mac Miller now has over 300,000 YouTube subscribers that receive an update every time a new video is posted on Mac's YouTube channel.

32.     Mac Miller's YouTube channel has had over 300 million views since the Kool Aid Video posted.

33.     The Kool Aid Video is the fourth most viewed of the fifty-nine videos on Mac Miller's YouTube Channel.

## Defendants are Unlawfully Selling Plaintiff's Music

34.     Defendants are also unlawfully selling plaintiff's Music online and as tapes and/or CDs.  Piff Tapes has unlawfully duplicated and uploaded plaintiff's Music to iTunes, Amazon, Google Play, and eMusic (and, possibly, other sites) and are selling The Kool Aid Song online as an individual digital download or as part of an album.  Exhibits 5, 6, 7, and 8 are copies of the online catalog entries for The Kool Aid Song from iTunes, Amazon, Google and eMusic.

35.     According to the information available online at these sites, Piff Tapes falsely claims to own a copyright in plaintiff's Music.  Plaintiff never agreed to allow defendants to sell his Music online in this manner.

36.     In addition, upon information and belief, defendants are selling tapes and/or CDs including the Kool Aid Song in stores and at Mac Miller concerts.  Annexed as Exhibit 9 is a copy of a poster created by defendants to promote sales of the K.I.D.S. stating that the mixtape is "in stores now."

## Public Performance Royalties

37.     Mac Miller registered with BMI as the author of the music embodied in the Kool Aid Song even though he took all of the Music from Finesse.  See Exhibit 10.  By doing so, Mac Miller will receive all performance royalties payable whenever the Kool Aid Song is publicly performed.  Lord Finesse will receive nothing.

## Live Performances

38.     Mac Miller has performed Kool Aid Song at sold out shows across the country, including in New York at the Roseland Ballroom on or about April 25-27, 2012, Irving Plaza on or about September 22, 2011, the Governors Ball Music Festival on or about June 18, 2011, and the Highline Ballroom on or about March 10, 2011.  Upon information and belief, Mac Miller performed Finesse's Music as part of The Kool Aid Song on each of these occasions.

## Plaintiff Never Gave Defendants Permission to Use or Sell His Music

39.     Finesse never gave permission or consent, and never granted any of the defendants a license, to use the Music from Hip 2 Da Game for any purpose.

40.     Mac Miller, Rostrum and Piff never communicated with plaintiff prior to reproducing, distributing, recording, selling, distributing or publicly performing Finesse's Music as part of The Kool Aid Song.

8

41.     In the less than two years since Mac Miller wrongfully appropriated Finesse's Music, Mac Miller has received 300 million YouTube views, released a number one rap record, and performed for hundreds of thousands of concertgoers at sold out shows in the United States and Europe.

42.     Before he wrongfully appropriated Finesse's Music, Mac Miller had never sold a single download.

43.     Defendants' wrongful use of Finesse's Music is part of their strategy to build a fan base as summarized in a November, 2011 article in the New York Times featuring Mac Miller (Exhibit 11):

> First, the good news: A new generation of rappers is actively trying to build a new business model in which releasing oodles of free material online builds a fan base that paves the way for revenue streams: touring, merchandise, even something as old-fashioned as a record deal

44.     On or about June 5, 2012, plaintiff demanded, in writing, that defendants cease and desist their unauthorized use of Finesse's Music.

45.     Defendants have not responded and continue to infringe plaintiff's copyright in the Music.

**First Cause of Action**
(Copyright Infringement – 17 U.S.C. § 101, et seq.)

46.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

47.     Defendants' reproduction, distribution, and public performances of the Music infringes on plaintiff's exclusive rights held under the Copyright Act, 17 USC § 101 et seq.

48.     Defendants' conduct has at all times been knowing and willful.

49.    As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, suffered damage, and defendants have profited in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

**Second Cause of Action**
(Unfair Competition under the Lanham Act)

50.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

51.    Defendants' actions described above constitute unfair competition with respect to plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(l).

52.    Defendants' wrongful conduct has been willful or knowing.

53.    As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

**Third Cause of Action**
(Violation of New York's General Business Law § 349)

54.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

55.    Section 349 of the New York State General Business Law declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this State."

56.    Section 349(g) provides that Section 349 "shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this State."

57.    Section 349(h) of the New York General Business Law provides a private right of action to any person injured by reason of a violation of that section and authorizes the Court to

award compensatory damages, statutory damages, and reasonable attorneys' fees to the prevailing plaintiff.

58.    Defendants, by their acts alleged and described herein, have committed a violation of Section 349(a) of the New York General Business Law.

59.    As a result of Defendants' violation of Section 349(a) of the New York General Business Law, Defendants are liable: (a) for compensatory damages; (b) for treble damages pursuant to Section 349(h) of the New York General Business Law; (c) for any and all reasonable attorneys' fees incurred and to be incurred by plaintiff in prosecuting this action pursuant to Section 349(h) of the New York General Business Law; and (d) for punitive damages in an amount to be determined by the jury.

60.    As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

## Fourth Cause of Action
(Violation of New York's Civil Rights Law § 50)

61.    Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

62.    Defendants are using plaintiff's name for trade without this permission or consent.

63.    Defendants' wrongful conduct constitutes a violation of New York Civil Rights Law § 50.

64.    As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

**Fifth Cause of Action**
(Tortious Interference)

65.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

66.     Defendants' intentionally wrongful conduct described herein has intentionally interfered in plaintiff's existing and prospective relationships with end users of the Music who download the Music via iTunes.

67.     As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

**Sixth Cause of Action**
(Unfair Competition under the New York State Law)

68.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

69.     Defendants' wrongful conduct constitutes unfair competition under New York State law.

70.     As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

**Seventh Cause of Action**
(Unjust Enrichment)

71.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

72.     Defendants have received something of value from plaintiff, consisting of use of his Music.

73.     Plaintiff has not received any compensation for the value of the Music which Defendants have received and/or used.

74.     Defendants have profited from and been enriched by of the use of plaintiff's Music.

75.     Defendants have been unjustly enriched.

76.     As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

<u>**Eighth Cause of Action**</u>
(Unfair Deceptive Practice Acts or Similar Statutes in each
State where Defendants have Violated Plaintiff's Rights)

77.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

78.     Defendants have willfully engaged in deceptive acts and/or unfair practices in the furnishing and infringing on Finesse's Music.

79.     Upon information and belief, defendants have engaged in this behavior in several states in the United States.

80.     Plaintiff is entitled to allege each and every state's deceptive act statute or similar statutes against the Defendant once additional information is learned through discovery.

81.     As a proximate result of defendants' wrongful conduct, plaintiff has been irreparably harmed, and has also suffered damage in an amount to be determined at trial, but in no event less than $10 million, exclusive of costs and interest.

### Ninth Cause of Action
(Permanent Injunction)

82.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.

83.     Plaintiff has a likelihood of eventual success in this litigation.

84.     Plaintiff will suffer irreparable harm if injunctive relief is not granted by this Court.

85.     Defendants' blatant distributions of plaintiff's intellectual property are causing irreparable harm to the Plaintiff.

### Demand for Jury Trial

86.     Plaintiff respectfully requests a trial by jury on all claims asserted in this Complaint.

### Prayer for Relief

WHEREFORE, plaintiff Robert Hall, professionally known as Lord Finesse, by his attorneys Schwartz & Ponterio, PLLC, respectfully requests that judgment be entered against defendants Malcolm McCormick p/k/a Mac Miller, Rostrum Records LLC, and Datpiff LLC, as follows:

A.     For judgment that defendants have violated the Copyright Act, the Lanham Act, New York General Business. Law § 349, New York Civil Rights Law §§ 50-51, and the relevant statutes of other states, that all such violations have been willful, that defendants have tortiously interfered with plaintiff's rights, have engaged in unfair competition, and have been unjustly enriched, all in violation of New York common law;

B.     For judgment entering a preliminary and permanent injunction enjoining and restraining defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from: (1) infringing plaintiff's exclusive rights under the Copyright Act by marketing, selling or distributing Finesse's Music in the United States; and (2) infringing plaintiff's rights in Finesse's Music by manufacturing, producing, distributing,

circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of in the United States any products bearing any of plaintiffs' trademarks, titles or Artist likeness or any other trademark, titles or likeness confusingly similar thereto.

C.    For judgment assessing defendants for the damages suffered by plaintiff, including an award of actual damages, including defendants' profits, or statutory damages (at plaintiff's election) under the Copyright Act, the Lanham Act, New York General Business Law § 349, exemplary damages under New York Civil Rights Law §§ 50-51, all profits that defendants have derived from their infringing acts, as well as costs and attorney's fees to the full extent provided for by Sections 504 and 505 of the Copyright Act, 17 U.S.C. §§ 504 and 505, and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and compensatory and punitive damages to the full extent available under the common law, in an amount in excess of $10,000,00; and

D.    For a judgment directing that defendants deliver up for destruction to plaintiff all copies of Finesse's Music in their possession or under their control, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503.

E.    For judgment granting such other, further, and different relief as to the Court may seem just and proper, including plaintiff's costs and reasonable attorneys' fees.

Dated: New York, New York
       July 6, 2012

                              SCHWARTZ & PONTERIO, PLLC
                              *Attorneys for Plaintiff*


               By:    _____
                              Brian S. Levenson
                              Matthew F. Schwartz
                              134 West 29th Street - Suite 1006
                              New York, New York 10001
                              Telephone: (212) 714-1200

15